| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

NIKITA VAN GOFFNEY, §
　　　　　　　　　　　　　　　§
　　　　　　Plaintiff, §
　　　　　　　　　　　　　　　§
*versus* § CIVIL ACTION H-02-2638
　　　　　　　　　　　　　　　§
J. SAUCEDA, *ET AL.*, §
　　　　　　　　　　　　　　　§
　　　　　　Defendants. §

# Opinion on Dismissal

　　Nikita Van Goffney sues police officers J. Sauceda, C. Davidson, T. Taylor, J. Everitt, G. Harday, M. Holt, J. Ferraro, G. Hardage, prosecutors Michael McDougal and Jim Prewitt, and the City of Conroe and Montgomery County, Texas. Goffney claims an illegal arrest and malicious prosecution, excessive force, racial discrimination, negligence, and the denial of medical care. Goffney sues under several civil rights statutes, and also claims state law violations and conspiracy. The defendants move for summary judgment.

1. *Claims*

　　Goffney's claims in his amended complaint (13) and qualified immunity reply (40) follow. On September 11, 2000, at 1:00 a.m., police stopped Goffney because he is black and he was out at night. Before the stop, Goffney was talking to Terry Gordon. When Goffney and Gordon saw Sauceda and Taylor approaching, they stopped talking and walked away in different directions. Goffney walked about 50 feet when Sauceda called for him to stop and return. Goffney complied. Sauceda asked Goffney about the encounter between him and Gordon. Goffney told him nothing.

　　Officers Holt, Ferraro, Hardage and Everitt arrived later. Sauceda told Goffney to sit on the ground. Sauceda searched Goffney and found a small revolver hidden in his pants. Goffney explained that he had just taken the gun from Gordon, but Sauceda handcuffed Goffney and placed him under arrest. Sauceda put Goffney in a patrol car.

　　There was no probable cause to detain or arrest Goffney. The police had not observed any criminal activity. The stop was unwarranted and caused by illegal municipal customs and policies, including racial profiling.

Goffney saw Ferraro turn on the heater in the patrol car and make sure the windows were shut and the doors closed. Within about ten minutes, Goffney had problems breathing and began gasping for air. Believing he was in a life-threatening situation, Goffney called out to the nearby officers. They ignored him. Hardage walked to the car and asked Goffney what he wanted. Goffney asked him to turn off the heater, or crack a window or door. Hardage refused.

Goffney asked again and the officers continued to ignore him. Desperate, Goffney began banging his head against the window to get the officer's attention. Hardage told Goffney to stop. Goffney again asked him to turn off the heater, or crack a window or door. Hardage again refused. Before Hardage could close the door, Goffney put one foot in the car door to keep it open so he could get some air. Hardage told Goffney to put his foot back in the car. Again, Goffney fearing he would die if sealed back in the car, begged Hardage to turn off the heater, or crack the window or door. Hardage responded by spraying pepper spray in Goffney's face for 8 to 10 seconds and then closing the door. This spray blinded Goffney, burned his face and eyes, and choked off his breath. Panic-stricken, Goffney struggled for his life because he believed he was suffocating and choking. He kicked blindly trying to get some air and caused the rear window to jump off its track.

With the window off track, Goffney leaned forward pressing his mouth up against the crack of about one inch and tried to breathe. Goffney was still blind, but he could breathe. Then one officer opened the door where Goffney had his mouth pressed against the window. Goffney, whose hands were still handcuffed, fell face first out onto the concrete.

While Goffney's body hung outside the police car, several officers pulled him back into the car. Goffney's face crashed again onto the concrete. The officers took Goffney by the handcuffs and feet and pulled him back in the police car, striking his head against the inside door. The officers again maced Goffney and kicked, punched, stomped, and hit him across his buttocks, back, legs and shoulders. In his unsigned, unsworn qualified immunity reply Goffney says he received multiple injuries: two black eyes, a broken blood vessel in one eye, a busted mouth, loosened teeth, and multiple lacerations on his arms, face, wrists, shoulders, stomach, and legs.

The officers took Goffney to the Conroe Police Department and dragged him out of the police car. A paramedic, Teri Shockley, asked Goffney if he was hurt and he said he was hurt and that he wanted to go to the hospital. However, Holt said that Goffney was going to jail. The officers took Goffney to the Montgomery County Jail and charged him with two counts of assaulting a police

officer and other offenses. The prosecutors conspired with the officers to prosecute Goffney to cover up police misconduct. The court acquitted Goffney of the charges of assaulting police officers.

2. *Excessive Force*

The Defendants' summary judgment evidence follows. Gordon told Taylor that Goffney had threatened him and that Goffney had a gun. Goffney was hiding a gun when Sauceda arrested him. After Sauceda put Goffney inside the patrol car, he began to hit the left window with his head. Hardage opened the door and told Goffney to stop doing this. Goffney put his foot in the door blocking Hardage from closing the police car door. Hardage asked Goffney to put his foot back inside the police car. Goffney did not comply. Hardage used pepper spray on Goffney to control Goffney's banging his head on the window and his failure to put his foot back in the car.

Goffney later kicked the window of the police car and again pushed his head against the window. When the officers opened the door to gain control of Goffney and stop any attempt to force his way out of the car, a struggle ensued between Goffney and three of the officers. Goffney and two of the officers claimed injuries from this encounter.

The court analyzes a claim of excessive force during an arrest under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fifth Circuit has adopted a three-part test for these claims. A plaintiff must show that he suffered "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). The force must be "clearly excessive to the need for force and the excessiveness [of the force must be] objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir.1998). "The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Glenn*, 242 F.3d at 314.

A. *Injury*

Goffney's only allegation in his unsworn amended complaint concerning the injuries he received is that he had a "physical injury." He does not elaborate. Goffney claims in his amended complaint that the Defendants responded to him kicking the patrol car window by macing, punching, kicking, and beating him with flashlights. (13, p. 7). Goffney states he was not trying to escape when this occurred. He mentions other injuries in his qualified immunity reply, however because

3

this reply was not sworn nor even signed, it carries no weight on whether Goffney has raised a genuine issue of material fact overcoming defendants' summary judgment showing. *Directv, Inc. v. Budden*, 420 F.3d 521, 530-31 (5th Cir. 2005).

Goffney's assertions in his sworn declaration in his summary judgment response follow. (74, p. 6). After he broke the patrol car window, Goffney fell out of the car when an officer opened the window. Goffney fell out toward the ground. An officer kicked him in the eye as he was falling out of the car and it immediately started bleeding profusely. The officers lifted Goffney from the ground and threw him back into the car. They opened the car door on the other side and pulled him into the car and then out of the car from the other side. Some officers struck Goffney on the back and shoulders with what appeared to be flashlights. They also kicked and beat Goffney on his back, ribs, buttocks, and legs. This lasted for several minutes. The officers then threw him back into the car.

Goffney's nose was bleeding profusely when the paramedic examined him at the jail. Goffney told the paramedic he wanted to see a doctor because his neck, back, and chest hurt. Goffney attaches a copy of a medical record which states he was bleeding from his nose and had pain in his face. (74, Exh. C). The medical examination showed a small amount of blood in Goffney's right nostril and osc spray residue on his face. *Id*. Officers rinsed Goffney for ten minutes in an outdoor shower and also rinsed his face for ten minutes. Goffney told the paramedic he was no longer burning from the spray. Examination of his nose revealed no pain, deformity, or edema. *Id*. The paramedic noted "on exam can find nothing else significant." *Id*.

Goffney's allegations of macing, kicking, punching, stomping and hitting during the short time it took to return him to the police car arguably raise facts showing excessive force. However, the record does not raise any genuine facts material to *excessive* force. That is because the summary judgment record, including Goffney's own papers, shows he did not suffer any injury other than a bloody nose. Furthermore, Goffney's allegations are inconsistent.

Goffney says in his summary judgment response that he told the paramedic that he needed to see a doctor and go to the hospital. He admitted in his deposition that the paramedic never said he needed to see a doctor or go to the hospital. (60, Exh. A, p. 40). Goffney also says in his deposition that the only medical treatment he should have received that he did not get was an examination to see if anything was wrong with him. *Id*., p. 156. He did not tell anyone at the county jail he needed medical attention. *Id*. He said he did not think there was any medical treatment they

that could have given him then.  *Id*., p. 157.  As of August 2003, three years after the incident, he has not requested any medical care since he has been in prison.  *Id*.

Goffney has not raised a genuine issue of material fact concerning an eye injury, or any other injury, except a bloody nose.  Goffney's unsupported, inconsistent allegations about the police beating him do not raise a fact issue material to his claim of *excessive* force.  The force used against Goffney, causing only a bloody nose, was reasonable.  Goffney repeatedly kicked the patrol car window, breaking it.  Goffney used his foot to keep the car door from being closed and then did not initially comply with the officer's order to put his foot back in the car.  After breaking the window, Goffney fell or forced his way out of the car.  "The reasonableness inquiry .... is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation." *Graham*, at 397.  Given the sole injury of a bloody nose, Goffney does not show that the force was clearly excessive to the need for force or that any excessiveness of the force was objectively unreasonable. *Heitschmidt*, 161 F.3d at 839.

B. *Inconsistent Allegations*

Goffney admits the second use of force followed him kicking the window with enough force to knock it off track.  (13, p. 6-7).  Goffney says when an officer opened the car door, he fell out of the car and the officers pulled him back into the car.  Goffney says the officers maced, kicked, punched, stomped, and hit him.  This occurred while he was in the back seat of the police car.  *Id*., p. 6-7.  He states he "was handcuffed and subdued, and *in the patrol car* where the officers inflicted harm by first by turning on the heater, then viciously beating him..." *Id*. (emphasis added).

In his summary judgment response, Goffney says he was "yanked out the door and *onto the ground* from the opposite side of the patrol car where the officers began striking plaintiff across his shoulders and back with what appeared to be 'flashlights.'" (74, p. 6).  This beating lasted several minutes, after which the officers picked Goffney off the ground and threw him in the car.  *Id*.

Goffney's assertions in his amended complaint and in his summary judgment response are factually different.  In his complaint, he alleges he was in the back seat of the car when the officers hit him but under Goffney's summary judgment declaration he alleges he was on the ground when they beat him for several minutes.  The inconsistency of Goffney's allegations in his summary judgment response renders it insufficient to overcome Defendants' summary judgment showing.

5

If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, the court should grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50(1986); *also see Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000) (conclusory allegations, improbable inferences, unsupported speculation, or a mere scintilla of evidence are insufficient to a defeat a motion for summary judgment). Furthermore, Goffney cannot raise a new claim to defeat a Defendant's summary judgment showing. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990) (claim raised not in complaint but, rather, in response to motion for summary judgment was not properly before court).

      C. *Context and Qualified Immunity*

Police officers must act quickly and decisively. In deciding the reasonableness of the defendants' actions, the court must allow for the "fact that police officers are often forced to make split-second judgements in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. The court must judge from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "at the moment" the force was used. *Id*., at 396.

Defendants assert qualified immunity. Under qualified immunity, if an officer reasonably, but mistakenly, believes that a suspect was likely to fight back or try to flee, the officer is justified in using more force than in fact was needed. *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001). An officer with a mistaken understanding on the amount of force allowed has qualified immunity. *Id*. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Officers must act quickly and decisively and may make mistakes. From the perspective of the officers on the scene, Goffney was not under control, he was damaging the police car, and he was possibly trying to exit or escape the patrol car. The pepper spray and the rough treatment resulting only in a bloody nose were reasonable under these circumstances.

Goffney claims without support that he was suffocating. He does not explain or show why a police officer would realize that being in a closed, heated car for ten minutes is medically dangerous or would justify a felony suspect's attempt to kick out patrol-car windows. There is no showing that a police car is hermetically sealed with the windows closed or that a suspect inside a sealed car is at risk of suffocating. Goffney says he was afraid of dying and put his foot in the door to keep it open and kicked out the window. However, the police officers perceived a recalcitrant

6

suspect acting out of control, damaging a police car, and possibly attempting to exit the patrol car. That is the context in which the officers used force against Goffney.

When the officer used pepper spray when Goffney put his foot in the patrol car door and briefly kept it there, he may have been mistaken that the use of pepper spray was legal to thwart a possible attempt to exit the car or escape. When several officers subdued Goffney in the back seat when he had broken the window after the first use of force, they may have been mistaken about the lawfulness of the force. However, qualified immunity covers these kinds of mistakes. *Saucier*, 533 U.S. at 205-06.

3. *Hot Patrol Car*

Goffney complains an officer put him in a sealed car with the heater running which endangered his life. The deliberate indifference standard governs this claim. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003) (applying deliberate indifference standard to confrontation between police and citizen). The conduct must involve a substantial risk of serious harm and must be motivated by a culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The plaintiff must show that the defendant knew facts from which an inference of risk could be drawn and that he drew the inference. *Id*.

Being inside a closed car for ten minutes at night in the summer with the heater running does not, by itself, show a substantial risk of serious harm. Furthermore, Goffney does not show that any defendant was aware or drew the inference of a substantial risk of serious harm to Goffney.

4. *Medical care*

Goffney claims the police were deliberately indifferent to his medical needs by not taking him to a hospital for an examination. However, the summary judgment record shows no injuries except a bloody nose. Goffney's deposition shows he did not need any medical care, and did not request any at the jail or later in prison. Goffney had no medical condition which needed attention. He has not shown deliberate indifference or the need for any medical care. *Farmer*, 511 U.S. at 837.

5. *Arrest and Prosecution*

Goffney's claims on his arrest and prosecution follow. The police had no probable cause to arrest or detain Goffney. They had not observed any criminal activity. The stop was unwarranted and caused by illegal municipal customs and policies. The prosecutors conspired with the officers to prosecute Goffney to cover up police misconduct. The defendants engaged in a malicious

prosecution. The charges against Goffney were false. The court acquitted Goffney of the charges of assaulting police officers.

The circumstances of Sauceda's and Taylor's initial encounter with Goffney justified them detaining Goffney. It was 1:00 a.m. when Sauceda and Taylor overheard a quarrel between Goffney and Gordon. (60, exhs. C, D). They were yelling and charging at each other in a breach of the peace. *Id.*, exh. D. Goffney admits it was a loud discussion. (74, p. 3). Goffney and his companion walked away from each other and the police when they saw the officers approach. Sauceda told Goffney to stop and after walking 40 to 50 feet Goffney complied. Gordon ran away. Taylor followed Gordon and detained him. Gordon told Taylor that Goffney had threatened to kill him with a gun, which he still possessed. Taylor radioed this information to Sauceda. He did a second pat-down search of Goffney and found the gun. Sauceda arrested Goffney.

Sauceda had a valid basis for the initial detention of Goffney and then to search and arrest him for possession of a weapon. Sauceda had probable cause. Goffney's Fourth Amendment claims concerning probable cause, the initial stop, search, and arrest fail. The grand jury indictment for possession of a weapon by a felon also defeats Goffney's claims concerning probable cause and the arrest. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). Goffney does not show a meritorious false arrest claim. *Hinshaw v. Doffer*, 785 F.2d 1260, 1266 (5th Cir. 1986).

Goffney claims malicious prosecution. There is no free standing right under the Constitution to be free from malicious prosecution. *Castellano v. Fragazo*, 352 F.3d 939, 942 (5th Cir.2003) (en banc). Goffney does not show malicious prosecution under Texas law. The Defendants' summary judgment evidence shows that Goffney struck officers Hardage and Pitzer in the face and head during a scuffle which resulted from Goffney's actions. (60, Exh. B). The elements of a malicious prosecution claim under Texas law include that the defendant acted without probable cause. *Pete v. Metcalfe*, 8 F.3d 214, 219 (5th Cir. 1993). Defendants' summary judgment evidence shows probable cause for assault, defeating Goffney's false arrest and malicious prosecution claims.

6. *Racial Profiling*

Goffney claims his detention and arrest were based on racial profiling. Defendants' evidence shows the police stopped, searched, and arrested Goffney based on law enforcement concerns without regard to race. Goffney alleges no facts which show racial profiling or race discrimination, much less submits summary judgment evidence. Goffney does not overcome Defendants' summary

8

judgment showing of the absence of racial profiling or any conduct which is racially discriminatory.

7. *Conspiracy, State Law, and Municipal Liability*

Goffney has not alleged any facts showing that any of the defendants agreed to commit an illegal act. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir 1982). His conspiracy claims fail. This court declines to exercise supplemental jurisdiction over Goffney's state law claims. 28 U.S.C. § 1367(c)(3). Furthermore, Goffney has not raised a genuine issue of material fact on his state law claims of assault and battery or negligence. Goffney's claims against the city of Conroe and Montgomery County fail. To establish municipal liability under section 1983, a complainant must show that a municipal policy or custom caused the constitutional deprivation. *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978). Goffney has not alleged any facts showing that any city or county policy or custom caused any of the deprivations he claims. Goffney has not shown he is entitled to relief under 42 U.S.C. §§ 1981, 1985, 1986.

8. *Conclusion*

The summary judgment record does not raise any facts material to Goffney's claims. Defendants' re-urged motions for summary judgment (92, 94) are granted. This case will be dismissed. Goffney's Motion for Temporary Restraining Order and Preliminary Injunction (103) is denied.

Signed March 14, 2008, at Houston, Texas.

Lynn N. Hughes
United States District Judge